IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **FOXWORTHY, INC.** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action File No. _____** |
| | : | |
| **vs.** | : | |
| | : | |
| **CMG SURETY, LLC,** | : | |
| **CMG LIFE SERVICES, INC.,** | : | |
| **SOVEREIGN-AMERICAN SECURITIES,** | : | |
| **INC., INTERNATIONAL POLICY** | : | |
| **MANAGEMENT & MARKETING, LLC,** | : | |
| **R. LAKEN MITCHELL, P.C.,** | : | |
| **R. LAKEN MITCHELL,** | : | |
| **RONALD TILLER, and ROBERT WHITE** | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

COMES NOW, FOXWORTHY, INC., ("Foxworthy"), Plaintiff in the above-styled action, and files this Complaint against Defendants CMG SURETY, LLC, CMG LIFE SERVICES, INC., SOVEREIGN-AMERICAN SECURITIES, INC., INTERNATIONAL POLICY MANAGEMENT & MARKETING, LLC, R. LAKEN MITCHELL, P.C., R. LAKEN MITCHELL, RONALD TILLER, and ROBERT WHITE, stating as follows:

### INTRODUCTION AND SUMMARY OF CLAIMS

This complaint asserts claims for breach of contract, breach of fiduciary duty, RICO, fraud and unjust enrichment. As demonstrated herein, Defendants have engaged in willful and intentional misconduct by hiding, mischaracterizing, and diverting profits in an effort to avoid

1

contractual and legal obligations owed to Plaintiff.  Defendants have wrongfully, intentionally, knowingly, and unlawfully failed and refused to pay millions of dollars that are contractually and legally owed to Plaintiff, and diverted the same for their own benefit

Foxworthy is entitled to 40% of the profits of CMG Surety, LLC, ("CMG Surety"). Foxworthy brings this action because CMG Surety, by and through its members and managers, has diverted funds of CMG Surety to the other Defendants, and to its members for their own personal benefit and gain, through a fraudulent scheme designed to avoid the legal and contractual obligations that CMG Surety owed to Plaintiff. This conduct is in violation of the contractual agreements entered into between CMG Surety and Foxworthy, and is also impermissible under both Georgia and Florida law as well as under the RICO statute, 18 U.S.C. §§ 1961, *et seq*. Plaintiff seeks: (1) damages in an amount equivalent to 40% of the profits earned, or that should have been earned, by CMG Surety; (2) punitive damages; (3) recovery of all sums improperly diverted from CMG Surety to other Defendants or others which has had an effect of minimizing or decreasing the profits of CMG Surety; (4) attorneys fees and expenses of litigation; (5) treble damages; (6) an accounting of all receipts and disbursements of CMG Surety since its inception; and (7) interest on all sums owed from the date same were due to Plaintiff.

The allegations set forth in this Complaint are made based on personal knowledge with respect to the actions of Plaintiff, the actions of others observed by Plaintiff, and communications to which Plaintiff was a party. Allegations regarding the actions of the Defendants or persons other than Plaintiff are generally made upon information and belief.

# PART I.

## PARTIES AND SERVICE OF PROCESS

### 1.

Foxworthy is a Nevada corporation with its principal place of business in the State of Georgia. Foxworthy is, in effect, managed by Ron Bell ("Bell"), individually, and through his investment management company, Bell Capital Management ("BCM").

### 2.

Defendant CMG Surety, LLC ("CMG Surety") is a Tennessee limited liability company, with its principal place of business located at 1016 Collier Center Way, Suite 100, Naples, Florida 34110. Defendant CMG Surety may be served by serving its registered agent for service of process at National Registered Agents, Inc., 3675 Crestwood Parkway, Suite 350, Duluth, Gwinnett County, Georgia 30096. CMG Surety is registered with the Georgia Secretary of State's Office and has authority to transact business in the State of Georgia.

### 3.

Defendant CMG Life Services, Inc. ("CMG Life Services") is a Tennessee corporation with its principal place of business located at 1016 Collier Center Way, Suite 100, Naples, Florida 34110. CMG Life Services may be served by serving its registered agent for service of process, Gary M. Brown, 211 Commerce Street, Suite 800, Baker Donelson Center, Nashville, Tennessee 37201.

4.

Defendant Sovereign-American Securities, Inc. ("SAS") is a Tennessee corporation with its principal place of business located at 1016 Collier Center Way, Suite 100, Naples, Florida 34110. Defendant SAS may be served by serving its registered agent for service of process, Ronald R. Tiller, 2038 Brookside Lane, Kingsport, Tennessee 37660.

5.

Defendant International Policy Management & Marketing, LLC ("International Policy") is a Florida limited liability company with its principal place of business located at 1016 Collier Center Way, Suite 100, Naples, Florida 34110.  Defendant International Policy may be served by serving its registered agent for service of process, R. Laken Mitchell, 4453 Brynwood Drive, Naples, Florida 34109.

6.

Defendant R. Laken Mitchell, P.C. ("RLM PC") is a Tennessee corporation with its principal place of business located at 1016 Collier Center Way, Suite 100, Naples, Florida 34110.  Defendant RLM PC may be served by serving its registered agent for service of process, Suzanna Mitchell, 739 Buck Mountain Trail, Cookeville, Tennessee, 38506.

7.

Defendant R. Laken Mitchell ("Mitchell") is a resident and citizen of the State of Florida and may be served with process at 4453 Brynwood Drive, Naples, Florida 34119-8416. Mitchell is a citizen of the State of Florida, and currently lives and is domiciled in the town of Naples,

4

Florida with the intent to make the State of Florida his true, fixed, permanent home and principal establishment.

8.

Defendant Ronald Tiller ("Tiller") is a resident and citizen of the State of Florida and may be served with process at 7144 Lemuria Circle, Apartment 110, Naples, Florida, 34109-6175. Tiller is a citizen of the State of Florida, and currently lives and is domiciled in the town of Naples, Florida with the intent to make the State of Florida his true, fixed, permanent home and principal establishment.

9.

Defendant Robert White ("White") is a resident and citizen of the State of Florida and may be served with process at 199 Topanga Drive, Bonita Springs, Florida, 34134-8545. White is a citizen of the State of Florida, and currently lives and is domiciled in the town of Bonita Springs, Florida with the intent to make the State of Florida his true, fixed, permanent home and principal establishment.

## PART II.

## <u>JURISDICTION</u>

10.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1367 (a) and 18 U.S.C. § 1964 (c).

11.

Pursuant to U.S.C. § 1331, this Court has jurisdiction over this action because this action involves a federal question, and has supplemental jurisdiction over other state law claims made herein.

12.

Pursuant to U.S.C. § 1332, this Court has jurisdiction of this action because the amount in controversy exceeds $75,000.00 exclusive of cost and interest and there is complete diversity of citizenship between the parties.

13.

For purposes of evaluating subject matter jurisdiction based on diversity of citizenship, Foxworthy is deemed a resident and citizen of the States of Nevada and Georgia.

14.

CMG Surety is presently comprised of the following members:  Mitchell, a resident and citizen of the State of Florida; and White, a resident and citizen of the State of Florida. Therefore, CMG Surety is a resident and citizen of the State of Florida for purposes of evaluating subject matter jurisdiction based on diversity of citizenship.

15.

For purposes of evaluating subject matter jurisdiction based on diversity of citizenship, CMG Life Services is deemed a resident and citizen of the States of Tennessee and Florida.

16.

For purposes of evaluating subject matter jurisdiction based on diversity of citizenship, SAS is deemed a resident and citizen of the States of Tennessee and Florida.

17.

International Policy is comprised of the following members: Mitchell, a resident and citizen of the State of Florida; and White, a resident of the State of Florida. Therefore, Defendant International Policy is a resident and citizen of the State of Florida for the purposes of evaluating subject matter jurisdiction based on diversity of citizenship.

18.

For purposes of evaluating subject matter jurisdiction based on diversity of citizenship, RLM PC is a resident and citizen of the States of Tennessee and Florida.

19.

Mitchell is a resident and citizen of the State of Florida.

20.

Tiller is a resident and citizen of the State of Florida.

21.

White is a resident and citizen of the State of Florida.

22.

This Court has personal jurisdiction over all Defendants as they are joint tortfeasors, who have committed torts within the jurisdiction of this Court.

23.

Defendant CMG Surety is a deemed a resident of the State of Georgia for purposes of analyzing personal jurisdiction because Defendant CMG Surety is registered to do business in the State of Georgia.

24.

The other Defendants herein are subject to personal jurisdiction in the State of Georgia pursuant to O.C.G.A. §§ 9-10-91(1), (2), and (3).

25.

Defendants transacted business in the State by contacting Ron Bell and the Plaintiff in person, by mail, and by telephone in Atlanta, Georgia concerning the business transactions and partnership/joint venture described herein.

26.

Furthermore, Defendants directed that wire transfers originate from the State of Georgia in connection with the business transactions and partnership/joint venture described herein.

27.

The entire financial component of the partnership/joint venture took place in Atlanta, Georgia at the Defendants' request.

28.

For the foregoing reasons, the Defendants are subject to personal jurisdiction in this Court pursuant to O.C.G.A. § 9-10-91(1).

29.

Defendants committed tortious acts or omissions within the State of Georgia in connection with the business transactions and partnership/joint venture described hereinafter, including without limitation by reaching out to Plaintiff in Georgia and fraudulently inducing Plaintiff to enter into a relationship with Defendant CMG Surety. Therefore, personal jurisdiction exists pursuant to O.C.G.A. § 9-10-91(2).

30.

Defendants committed tortious acts or omissions in other states which caused injury to Plaintiff in the State of Georgia, including without limitation by diverting profits from Defendant CMG Surety to other Defendants, and mischaracterizing profits paid into CMG Surety, in order to avoid paying a percentage thereof to Plaintiff. Defendants regularly solicit business in the State of Georgia. Therefore, personal jurisdiction exists pursuant to O.C.G.A. § 9-10-91(3).

31.

The Defendants have sufficient minimum contacts with the State of Georgia to merit exercise of personal jurisdiction, as the Defendants have purposefully directed their activities toward the State of Georgia, and purposefully availed themselves of the privilege of conducting activities within the State.

## PART III.

## <u>VENUE</u>

32.

At all times, the entire monetary capital and financial components necessary to form, establish, and maintain the joint venture and contract relationship originated and emanated from Atlanta, Fulton County, Georgia.

33.

Venue is proper under 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965 (a) as to CMG Surety because the entire Complaint involves the wrongful diversion of funds of CMG Surety, and (i) CMG Surety is registered with the Georgia Secretary of State Office, has authority to transact business of the State of Georgia, does in fact transact business in the State of Georgia and maintains a registered agent for service of process in Duluth, Gwinnett County, Georgia; (ii) many of the acts complained of in this Complaint originated in Fulton County, Georgia, including but not limited to, the negotiation and entering into of various contractual agreements between CMG Surety and Foxworthy, as well as wire transfers of funds to and from bank accounts in Georgia, Florida, Tennessee, and Ohio; and (iii) a substantial part of the events giving rise to the claim set out below occurred in this judicial district.

34.

Venue in this Court is proper pursuant to 28 U.S.C. 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PART IV.

## FACTS

35.

Bell is the sole shareholder of BCM, an investment management business.

36.

In or around 2002, Mitchell approached Bell in Atlanta, Georgia in an effort to sell interests in oil and gas drilling operations, which contained a life insurance component.

37.

After some discussion and due diligence, Bell decided that he was not interested in investing in oil and gas drilling operations, but was interested in investments in life insurance policies, known as "senior life settlements" or "viatical settlements."

### Background – Life Settlements

38.

A life settlement is the purchase of an existing life insurance policy from the policy holder where the insured has a limited life expectancy.

39.

Where the insured is projected to live approximately two (2) years or less, the purchase of his life insurance policy is known as a viatical settlement. Where the insured is projected to live longer, the purchase is known as a senior life settlement. For purposes of simplicity, both will hereinafter be referred to as "Life Settlements."

40.

Holders of life insurance policies have traditionally been able to surrender policies to the insurance company in the event the holder no longer needed the policy or needed to liquidate the policy, with the insurance company paying a cash value dictated by the insurer.

41.

At some point, investors realized that the cash value offered by the insurance companies was less than the true value of the policy, and a secondary market opened up for purchase of existing life insurance policies, i.e. a Life Settlement.

42.

The purchaser of a Life Settlement purchases the policy at less than the face value (i.e. the death benefit) of the policy, typically paying 40% of the face value.

43.

This purchase price, though lower than face value, normally exceeds the cash value the holder could obtain if he sold the policy back to the insurance company.

44.

For example, a policy with a $2.5 million face value (or death benefit) for an individual with a life expectancy of approximately six years would, as a general rule of thumb, sell in a life settlement for $1 million (or 40% X $2.5 million), where the insured had a life expectancy of 5 to 6 years.

45.

The purchaser of a life settlement holds the policy and pays the premiums until the insured dies, at which point the purchaser collects the death benefit.

<u>The Life Settlement Investment</u>

46.

Prior to starting its relationship with Bell and Foxworthy, CMG Surety had purchased (either directly or through an affiliated entity) one life insurance policy, which it placed in a trust known as the Secure Growth America Trust I ("SGAT I").

47.

At some point after the initial meeting between Mitchell and Bell, Mitchell offered Bell and BCM the opportunity to purchase an interest in the SGAT I, but Bell and BCM wanted to evaluate the Life Settlement business before putting any of BCM's managed funds at risk.

48.

Bell traveled to Naples, Florida to visit Mitchell and perform background due diligence on CMG Surety. Bell also traveled to Waco, Texas to visit the offices of EMSI, an industry leader in evaluating the life expectancy of insureds, and to Cleveland, Ohio to visit the offices of Mills, Potoczak & Company, an accounting firm which acts as escrow agent for many viatical settlement businesses.

49.

Bell also extensively reviewed the projected investment, and internal rate of return Mitchell was forecasting for the policy purchased and placed in the SGAT I, and for policies to be placed into future trusts. Bell believed that the calculation was flawed. Bell ultimately devised a new method of calculating the rate of return on Life Settlements, which was subsequently patented.

50.

After performing extensive due diligence into the Life Settlement business, Bell chose not to directly invest in the SGATs but to instead loan money to new SGATs for the purchase of multiple policies to place within the SGATs. CMG Surety would be the trustee of the SGATs.

51.

Together, Bell and CMG created a joint-venture, or partnership-in-fact, and devised an investment plan to spend approximately $20 million purchasing Life Settlements which would be packaged into new SGATs.

52.

Bell had extensive financial background and knowledge, as well as access to substantial capital. Therefore, due to the complex nature of these transactions, as well as Mitchell, Tiller, and White's lack of financial experience, and CMG's lack of funds, it was critical that Bell and his entities be involved in such a joint-venture or partnership.

14

53.

CMG, Mitchell, Tiller, and White did not have the funding necessary to either (1) purchase the Life Settlements, or (2) continue to pay the premiums in order to keep the policies in effect.

54.

Since CMG did not have $20 million with which to purchase the Life Settlements, Bell provided the funds through Premium Life Settlements, LLC, a limited liability company owned by Foxworthy.

55.

Since CMG lacked the funds to pay the premiums on the purchased Life Settlements, Bell provided these funds through Premium Grade Financing, LLC, a limited liability company owned by Foxworthy.

56.

Foxworthy is the managing member of both Premium Life Settlements, LLC and Premium Grade Financing, LLC.

57.

The complexities involved in this type of investment and CMG's lack of capital and financial knowledge made the partnership with Bell and his entities paramount to the viability of the investment.

58.

The Life Settlement business consisted of a joint-venture between Foxworthy, Bell, BCM, and CMG Surety.

59.

Through the joint-venture/partnership, the parties established the Life Settlement investment business through the use of various SGATs.

60.

To facilitate the foregoing, BCM entered into a Facility Funding Agreement dated March 1, 2004 by which BCM agreed to loan funds for a warehouse loan facility (for the purchase of existing life insurance policies which met certain criteria), a premium finance facility (to pay the premiums accruing after purchase of the policies), and a liquidity facility (to pay off investors who wished to pull their money out after a certain period of time).

61.

Premium Life Settlements, LLC, provided the warehouse facility funds for purchase of the Life Settlements and placement into a SGAT.

62.

These trusts were titled SGAT II, III, IV, V, & VI.

63.

Outside investors could purchase an interest in these trusts, and become grantors-beneficiaries. Investors would receive a return on their investment when the insured died, and a

Life Settlement (policy) paid the death benefit.

64.

CMG Surety was the trustee of each of the trusts, and was paid fees for its services as a trustee.

65.

Premium Grade Financing, LLC provided the premium financing facility and, to this day, is funding certain premiums for CMG Surety.

<u>Foxworthy's Rights to Profits of CMG Surety</u>

66.

Because Foxworthy was the managing member of both Premium Life Settlements, LLC and Premium Grade Financing, LLC, CMG Surety requested that Foxworthy serve as administrator of the two loan facilities, as evidenced by that certain Master Revolving Credit Agreement and Revolving Credit Agreement, both dated December 1, 2004, true and correct copies of which are attached hereto as Exhibits A and B, respectively.

67.

In consideration of Foxworthy's agreement to invest capital into the joint venture and Foxworthy's role as administrator of the two loan facilities, Foxworthy and CMG Surety also entered into a Restricted Financial Interest Participation Agreement (hereinafter referred to as "Financial Interest Agreement #1"), a true and correct copy of which is attached hereto as Exhibit C and incorporated by reference herein.

17

68.

Financial Interest Agreement #1 granted Foxworthy a one-fifth (1/5) interest in any distribution of profits of CMG Surety and one-fifth (1/5) of any funds received from the sale of part or all of the Company, both to the same extent as any equity owner or partner of CMG Surety.

69.

On or about December 15, 2004, Foxworthy and CMG Surety entered into a second Restricted Financial Interest Participation Agreement ("Financial Interest Agreement #2"), a true and correct copy of which is attached hereto as Exhibit D and incorporated herein by reference.

70.

Financial Interest Agreement #2 provides an <u>additional</u> one-fifth (1/5)  interest in any distribution of profits of CMG Surety and an additional one-fifth (1/5) of any funds received from the sale of part or all of CMG Surety, both to the same extent as an equity owner or partner of CMG Surety.  (The Financial Interest Agreements #1 and #2 are sometimes hereinafter referred to collectively as the "Interest Agreements").

71.

The Interest Agreements granted Foxworthy a total 2/5 (i.e. 40%) interest in the distributions of CMG Surety's profits, as well as 40% of any funds received from the sale of part or all of CMG Surety.

72.

Subsequent to the inception of the joint-venture, BCM and CMG Surety learned of a mutual fund in Australia, Life Settlements Wholesale Fund (the "Australian Fund"), which was managed by Life Settlement Funds Limited, an Australian company (the "Australian Fund Manager").

73.

Due to the high costs of running the SGATs, BCM and CMG Surety discussed the possibility of placing the SGATs into the Australian Fund.

74.

Bell and CMG Surety met with the Australian Fund Manager's principals, Ian Cotton and Grant Vickers, in Australia.  The Australian Fund wanted to obtain the SGATs, and also obtain a substantial investment from an Australian pension fund; however, it did not have sufficient capital at the time, and could not consummate both transactions without a substantial loan being made to a related entity, Viaticorp.

75.

BCM agreed to loan $8 million to Viaticorp to facilitate the purchase of portfolios of Life Settlements and the investment of the pension fund. Without BCM's loan, such purchases could not, and would not, have occurred. This loan closed October 5, 2005.

76.

The SGATs were thereafter placed into the Australian Fund, and were managed as a part

of the Australian Fund.

77.

As consideration for the transfer of the SGATs into the Australian Fund, CMG Surety received an interest in the Australian Fund Manager, and became the sole procurer of Life Settlements (individual policies and portfolios of policies) for the Australian Fund to purchase and hold as investments.

78.

Subsequently, the Australian pension fund invested $1 billion in the Australian Fund.

79.

With this $1 billion investment, the Fund obtained Life Settlements with a face value of approximately $2.5 billion.

80.

For each Life Settlement obtained, CMG Surety was entitled to a commission of two percent (2%) of the face value of the policy. CMG Surety should therefore have received a total commission in the amount of approximately $50 million.

81.

Additionally, the Australian Fund Manager was to receive a fee of one and nine-tenths percent (1.9%) of the market value of the fund, annually.  CMG Surety, as an owner in the Australian Fund Manager, should have received its pro rata share of the net monies from this fee.

Financial Irregularities

82.

Bell, on behalf of Foxworthy, received a financial statement for CMG Surety in 2004, but never received any subsequent financial statements for CMG Surety, despite numerous repeated requests.

83.

Foxworthy was not provided the requested financials. When Bell contacted Mitchell directly regarding the requested information, Mitchell refused to provide them.

84.

In early 2011, CMG Surety finally provided Foxworthy a statement of distributions, compiled by CMG Surety's accountant. At the same time, CMG Surety provided incomplete financial statements for CMG Surety for years 2004 through 2010 (the "Financial Statements").

85.

From 2004 to 2010, the members of CMG Surety received the following distributions: Mitchell – $9,700,358.73; White – $9,729,527.09; and Tiller – $7,926,198.76, a total of $27,419,084.58 in distributions.

86.

From 2004 to 2010, CMG Surety only paid Foxworthy $3,675,000.00 as Foxworthy's "40%" share of the distributions of CMG Surety. Based only upon the limited information provided thus far by CMG Surety, Foxworthy's 40% interest in the distributions should have

been, at a minimum, $8,762,633.83.

87.

Mitchell, Tiller, and White authorized and/or accepted distributions from CMG Surety with knowledge that Foxworthy was not receiving its 40% of the profit distributions, and with knowledge that Foxworthy was owed 40% of the profit distributions.

88.

CMG Surety has not disclosed to Plaintiff the total commissions it received through the Australian Fund. CMG Surety, Mitchell, White, and/or Tiller are diverting or have diverted some or all of those commissions to International Policy and possibly other Defendants.

89.

CMG Surety has not paid to Foxworthy a 40% share of distributions attributable to these commissions.

90.

Mitchell, Tiller, and White authorized and/or accepted distributions from CMG Surety, attributable to these commissions, with knowledge that Foxworthy was not receiving its 40% of distributions and with knowledge that Foxworthy was owed 40% of the profit distributions.

91.

CMG Surety has not disclosed to Plaintiff the distributions it receives for its ownership in the Australian Fund Manager.

92.

CMG Surety, Mitchell, White, and/or Tiller are diverting and have diverted some or all of those distributions to which CMG Surety was entitled to Defendant CMG Life Services and, upon information and belief, other Defendants.

93.

CMG Surety has not paid Foxworthy a 40% share of funds it receives from its ownership in the Australian Fund Manager.

94.

Mitchell, Tiller, and White knew about this diversion of funds and authorized the same.

95.

CMG Surety and its principals are conducting business through Defendant CMG Life Services, as opposed to CMG Surety, in order to avoid paying the 40% of distributions due under and pursuant to its joint venture, and partnership, and contractual agreements with Foxworthy.

96.

CMG Surety is funding some or all of the expenses attributable to the Life Settlement business, while CMG Life Services retains the proceeds and profits of the Life Settlement business.

97.

CMG Surety and/or CMG Life Services is also performing services for a Canadian fund similar or identical to those services CMG Surety provided to the Australian Fund, and is doing

so either without paying the proceeds to CMG Surety, and/or without allocating to Foxworthy its 40% of any distribution of such proceeds.

## COUNT ONE – BREACH OF FIDUCIARY DUTY

98.

Plaintiff incorporates by reference Paragraphs 1 - 97, as if fully set forth herein.

99.

As managers and members and directors and officers of the various corporate and company Defendants, Defendants owed a fiduciary duty to the Plaintiff, in its capacity as a member of the joint-venture Life Settlement business and as an entity entitled to share in the profits and distributions of CMG Surety.

100.

Mitchell, Tiller, and White, individually and through their roles as members, directors, and officers of the corporate Defendants, mismanaged CMG Surety for their own personal benefit and breached their fiduciary duties owed to Plaintiff, by causing CMG Surety to divert its profits to themselves personally and to other entities and to otherwise take the actions set out in Paragraphs 1-86 of this Complaint.

101.

As a direct and proximate result of the mismanagement and breaches of fiduciary duty, the Plaintiff has been damaged and suffered injury in the amount of distributable profits of CMG Surety that was intentionally withheld and not paid to Plaintiff, and that was instead paid to

Defendants and other entities.

102.

Because Mitchell, Tiller, and White individually, and in their role as officers and directors and members and managers of the corporate entities, have acted willfully, wantonly and with malice, Plaintiff is entitled to punitive damages in an amount sufficient to deter Mitchell, Tiller, and White from engaging in similar conduct in the future.

WHEREFORE, with respect to Count One, Plaintiff respectfully requests that this Court: (a) enter judgment in favor of Plaintiff and against Defendants in an amount to be determined at trial plus interest; (b) award Plaintiff compensatory and punitive damages; (c) award Plaintiff a trial by jury; (d) award Plaintiff attorney's fees and cost; and (e) grant Plaintiff any other relief that this Court deems just and proper.

## COUNT TWO – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

103.

Plaintiff incorporates by references Paragraphs 1 - 102, as if fully set forth herein.

104.

Insofar as Mitchell, Tiller, and White, individually and in their capacity as members, managers, directors, and officers of the corporate and company Defendants breached their fiduciary duty to the Plaintiff in their joint venture in the Life Settlement business, the other Defendants, namely CMG Life Services, Inc., Sovereign-American Securities, Inc., International Policy Management & Marketing, LLC's  knowledge of and participation in the breaches of

25

fiduciary duty renders them liable to the Plaintiff for aiding and abetting such breach of fiduciary duty.

105.

Furthermore, CMG Life Services, Inc., Sovereign-American Securities, Inc., International Policy Management & Marketing, LLC are joint tortfeasors pursuant to O.C.G.A. § 51-12-30, who acted in concert with Mitchell, White and Tiller in the breach of this fiduciary duty.

106.

As a direct and proximate result of the above-referenced breach of fiduciary duty and the aiding and abetting of Mitchell, Tiller and White's breach of fiduciary duty, the Plaintiff has been damaged and the Plaintiff has suffered injury in the loss of the profits that should have been distributed to the Plaintiff through CMG Surety.

107.

Because Mitchell, Tiller, and White individually, and in their role as officers and directors and members and managers of the corporate entities, have acted willfully, wantonly and with malice, Plaintiff is entitled to punitive damages in an amount sufficient to deter Mitchell, Tiller, and White from engaging in similar conduct in the future.

WHEREFORE, with respect to Count Two, Plaintiff respectfully requests that this Court: (a) enter judgment in favor of Plaintiff and against Defendants in an amount to be determined at trial plus interest; (b) award Plaintiff compensatory and punitive damages; (c) award Plaintiff a

trial by jury; (d) award Plaintiff attorney's fees and cost; and (e) grant Plaintiff any other relief that this Court deems just and proper.

## COUNT THREE – CONSPIRACY TO BREACH FIDICIARY DUTY

108.

Plaintiff incorporates by references Paragraphs 1 - 107, as if fully set forth herein.

109.

Defendants Mitchell, Tiller, and White, individually and in their role as members, managers, and corporate officers, conspired with the other Defendants to breach their fiduciary duty to the Plaintiff.

110.

Defendants conspired to (1) breach their fiduciary duties owed to Plaintiff; (2) mismanage the assets and business of CMG Surety such that its profits could be diverted into other entities and into the personal accounts and use of Mitchell, Tiller, and White in order to avoid paying Plaintiff 40% of the distributable profits; (3) divert corporate opportunities belonging to CMG to other entities to avoid the creation of additional profits in which Plaintiff would be entitled to 40%; (4) engage in corporate self-dealing for the benefit of themselves and to avoid contractual and legal responsibilities; and (5) unjustly enrich themselves to the detriment of the Plaintiff.

111.

Defendants jointly conspired to knowingly and purposefully cause CMG Surety to take the actions set out in Paragraphs 1-86 of the Complaint, including mismanagement, usurpation of corporate opportunity, and waste of corporate assets, corporate self-dealing and unjust enrichment.

112.

Defendants worked in concert and furtherance of the conspiracy's purpose of mismanagement, usurpation of corporate opportunity, waste of corporate assets, corporate self-dealing and unjust enrichment and similar acts for the direct benefit of all Defendants.

113.

Plaintiff has sustained loss and direct injuries as a direct and proximate result of the breaches of fiduciary duty by the Defendants pursuant to the conspiracy alleged herein.

114.

Because Defendants have acted willfully, wantonly and with malice, Plaintiff is entitled to punitive damages in an amount sufficient to deter Defendants from engaging in similar conduct in the future.

WHEREFORE, with respect to Count Three, Plaintiff respectfully requests that this Court: (a) enter judgment in favor of Plaintiff and against Defendants in an amount to be determined at trial plus interest; (b) award Plaintiff compensatory and punitive damages; (c) award Plaintiff a trial by jury; (d) award Plaintiff attorney's fees and cost; and (e) grant Plaintiff

any other relief that this Court deems just and proper.

## COUNT FOUR – CORPORATE SELF-DEALING

### 115.

Plaintiff incorporates by references Paragraphs 1 - 114, as if fully set forth herein.

### 116.

The fiduciary duty imposed on the directors of the Corporation and the Manager of an LLC prohibits them from, among other things, appropriating for themselves the assets and property of the corporation or Limited Liability Company.

### 117.

As directors and officers, Mitchell, Tiller and White owed CMG Surety's members a fiduciary duty not to appropriate for themselves the assets and property of CMG Surety.

### 118.

As members and managers of CMG Surety, Mitchell, Tiller, and White owed a fiduciary duty to Plaintiff, as part of the joint-venture that they, and CMG Surety, entered into with Plaintiff, not to appropriate for themselves the profits of CMG Surety, as Plaintiff was entitled to 40% of the distributable profits.

### 119.

Mitchell, Tiller, and White individually, and through their use in the control of CMG Surety, breached that fiduciary duty which caused CMG Surety to take the actions set out in Paragraphs 1-86 of this Complaint.

120.

As a direct and proximate result of the breach of fiduciary duty and corporate self-dealing, Plaintiff has suffered injury in the loss of the 40% of distributable profits of CMG Surety.

121.

Because Mitchell, Tiller, and White and each of the other Defendants have acted willfully, wantonly, and with malice, Plaintiff is entitled to punitive damages in an amount sufficient to deter Defendants from engaging them in similar conduct in the future.

WHEREFORE, with respect to Count Four, Plaintiff respectfully requests that this Court: (a) enter judgment in favor of Plaintiff and against Defendants in an amount to be determined at trial plus interest; (b) award Plaintiff compensatory and punitive damages; (c) award Plaintiff a trial by jury; (d) award Plaintiff attorney's fees and cost; and (e) grant Plaintiff any other relief that this Court deems just and proper. Plaintiff a trial by jury; (d) award Plaintiff attorney's fees and cost; and (e) grant Plaintiff any other relief that this Court deems just and proper.

## COUNT FIVE – UNJUST ENRICHMENT

122.

Plaintiff incorporates by references Paragraphs 1 - 121, as if fully set forth herein.

123.

The theory of unjust enrichment applies when as a matter of fact there is no legal contract, but where the party sought to be charged has been conferred a benefit by the party

contending an unjust enrichment for which the benefited party equitably ought to return or compensate the providing party, or return the benefit that was received.

124.

CMG Life Services, Inc., Sovereign-American Securities, Inc., and International Policy Management & Marketing, LLC were unjustly conferred a benefit to the expense of the Plaintiff when Mitchell, Tiller, and White individually and by and through their control of CMG Surety, caused profits rightfully belonging to CMG Surety to be diverted to them which, in essence, concealed profits from the Plaintiff and caused CMG Surety to avoid the contractual obligation it had to pay 40% of the distributable profits to the Plaintiff.

125.

As a direct and proximate result of the diversion of CMG's profits to these Defendants, Defendants have been unjustly enriched at the expense of the Plaintiff and the Plaintiff has been damaged.

WHEREFORE, with respect to Count Five, Plaintiff respectfully requests that this Court: (a) enter judgment in favor of Plaintiff and against Defendants in an amount to be determined at trial plus interest; (b) award Plaintiff compensatory and punitive damages; (c) award Plaintiff a trial by jury; (d) award Plaintiff attorney's fees and cost; and (e) grant Plaintiff any other relief that this Court deems just and proper.

## COUNT SIX – FEDERAL RICO – 18 U.S.C. § 1962(c)

126.

Plaintiff incorporates by references Paragraphs 1 - 125, as if fully set forth herein.

127.

Defendant CMG Surety is an "enterprise" within the meaning of 18 U.S.C. § 1961(4), which enterprise affects interstate commerce.

128.

Alternatively, Defendant CMG Life Services, Inc. is an "enterprise" within the meaning of 18 U.S.C. § 1961(4), which enterprise affects interstate commerce.

129.

Alternatively, Sovereign-American Securities, Inc., is an "enterprise" within the meaning of 18 U.S.C. § 1961(4), which enterprise affects interstate commerce.

130.

Alternatively, International Policy Management & Marketing, LLC is an "enterprise" within the meaning of 18 U.S.C. § 1961(4), which enterprise affects interstate commerce.

131.

Alternatively, R. Laken Mitchell, P.C. is an "enterprise" within the meaning of 18 U.S.C. § 1961(4), which enterprise affects interstate commerce.

132.

Alternatively, R. Laken Mitchell is an "enterprise" within the meaning of 18 U.S.C. § 1961(4), which enterprise affects interstate commerce.

133.

Alternatively, Ronald Tiller is an "enterprise" within the meaning of 18 U.S.C. § 1961(4), which enterprise affects interstate commerce.

134.

Alternatively, Robert White is an "enterprise" within the meaning of 18 U.S.C. § 1961(4), which enterprise affects interstate commerce.

135.

Alternatively, CMG Surety, CMG Life Services, Inc., Sovereign-American Securities, Inc., and International Policy Management & Marketing, LLC, R. Laken Mitchell, P.C., Mitchell, Tiller, and White, operated as an "association-in-fact," and comprised an "enterprise" within the meaning of 18 U.S.C. § 1961(4), which "enterprise" affects interstate commerce. Such "association-in-fact" was an ongoing association organized for the common purpose of perpetuating Mitchell, Tiller, and White's fraudulent and illegal scheme of transferring, using mail and wires, a portion of profits earned or prospective profits to be earned by CMG Surety, to CMG Life Services, Inc., Sovereign-American Securities, Inc., and International Policy Management & Marketing, LLC, all corporations or limited liability companies of which Mitchell, Tiller and White were owners or members. These profits or prospective profits were

transferred to the above-referenced entities using the mail, or wires, at the direction of Mitchell, Tiller or White. Furthermore, profits of CMG Surety were further directed individually to Mitchell, Tiller and White at their direction, so they could personally profit from distribution of these profits all without paying to Foxworthy 40% of the profits as was agreed in contractual agreements and as part of the partnership agreement and joint-venture as described herein. Such enterprise was controlled by Mitchell, Tiller and White and systematically carried out as a function of perpetuating their fraudulent and illegal scheme to divert profits from CMG Surety to themselves personally or to entities which they controlled all in an effort to avoid CMG's contractual obligation to pay 40% of its profits to Foxworthy.

136.

Mitchell, Tiller and White are persons employed by or associated with an enterprise described in this Complaint.

137.

Mitchell, Tiller and White have conducted or participated, directly or indirectly, in the conduct of the affairs of an enterprise described in this Complaint, and there were at least two acts of "racketeering activity," including wire fraud, and mail fraud, which is defined as "racketeering activity" under 18 U.S.C. § 1961(1) .

138.

Every time that Mitchell, Tiller, and White, or their agents, directed CMG Surety to transfer funds to the entities controlled by them, or to them individually, they committed wire

34

fraud and/or mail fraud in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 1341. Mitchell, Tiller and White intentionally participated in a scheme to defraud Foxworthy of its entitlement to 40% of the profits of CMG Surety. This scheme involved, among other things, allocating profits to themselves disguised as bonuses, directing charitable gifts to charitable entities in their individual names so as to erode the profits and not to distribute the 40% to Foxworthy and to otherwise divert profits of CMG Surety to other entities such as CMG Life Services, Inc., Sovereign-American Securities, Inc., and International Policy Management & Marketing, LLC, and R. Laken Mitchell, P.C. all in an effort to avoid the obligation of CMG Surety to distribute 40% of the profits to Foxworthy.

139.

Mitchell, Tiller and White had the specific intent to defraud Foxworthy by not disclosing the profits earned by CMG Surety or to be earned by CMG Surety, when, in fact, the profits were directed to Mitchell, Tiller and White individually, or to other entities which they control. Mitchell, Tiller, and White also had the specific intent to defraud Foxworthy by not providing Foxworthy with updated and accurate financial statements and by otherwise concealing the transfer of the profits from CMG Surety to themselves individually or to other entities. Mitchell, Tiller, and White and/or their agents used wires, specifically telephone, facsimile, and bank wires, and the mail, in furtherance of the scheme. Such actions directly and proximately caused damage to Foxworthy. Each instance in which Mitchell, Tiller or White or their representatives or agents transferred funds from CMG Surety to any entity which they controlled or to

themselves individually, by bank wires, telephone, facsimile or mail in connection with this scheme, constitutes a separate predicate act.

140.

Mitchell, White and Tiller's discrete acts of racketeering activity constitutes a pattern of racketeering activity because they have the same or similar purposes, results, participants, victim or methods of commission. The discrete racketeering acts demonstrate continuity because they repeatedly occurred from 2004 even up to the present. Mitchell, Tiller and White committed these acts of racketeering activity as a regular manner of conducting business, starting, at the latest, in 2004 and continuing into 2011.

141.

Each alternative "enterprise" described in this Complaint affects interstate commerce.

142.

As a direct and proximate result of Mitchell, Tiller and White's and CMG Surety's racketeering activity, the Plaintiff suffered injury to its property.

143.

Since Plaintiff was directly injured by the racketeering activity, Plaintiff seeks three times the amount of actual damages, attorney's fees, plus punitive damages in the amount sufficient to punish CMG Surety, Mitchell, Tiller and White.

WHEREFORE, with respect to Count Six, Plaintiff respectfully requests that this Court: (a) enter judgment in favor of Plaintiff and against Defendants in an amount to be determined at

trial plus interest; (b) award Plaintiff compensatory and punitive damages; (c) award Plaintiff treble damages (d) award Plaintiff a trial by jury; (e) award Plaintiff attorney's fees and cost; and (f) grant Plaintiff any other relief that this Court deems just and proper.

## COUNT SEVEN – GEORGIA RICO – O.C.G.A. § 16-14-4(A)(B)

144.

Plaintiff incorporates by references Paragraphs 1 - 143, as if fully set forth herein.

145.

Defendant CMG Surety is an "enterprise" within the meaning of O.C.G.A. § 16-14-3(6), which enterprise affects commerce in the State of Georgia and elsewhere.

146.

Alternatively, Defendant CMG Life Services, Inc. is an "enterprise" within the meaning of O.C.G.A. § 16-14-3(6), which enterprise affects commerce in the State of Georgia and elsewhere.

147.

Alternatively, Sovereign-American Securities, Inc., is an "enterprise" within the meaning of O.C.G.A. § 16-14-3(6), which enterprise affects commerce in the State of Georgia and elsewhere.

148.

Alternatively, International Policy Management & Marketing, LLC is an "enterprise" within the meaning of O.C.G.A. § 16-14-3(6), which enterprise affects commerce in the State of

Georgia and elsewhere.

149.

Alternatively, R. Laken Mitchell, P.C. is an "enterprise" within the meaning of O.C.G.A. § 16-14-3(6), which enterprise affects commerce in the State of Georgia and elsewhere.

150.

Alternatively, R. Laken Mitchell is an "enterprise" within the meaning of O.C.G.A. § 16-14-3(6), which enterprise affects commerce in the State of Georgia and elsewhere.

151.

Alternatively, Ronald Tiller is an "enterprise" within the meaning of O.C.G.A. § 16-14-3(6), which enterprise affects commerce in the State of Georgia and elsewhere.

152.

Alternatively, Robert White is an "enterprise" within the meaning of O.C.G.A. § 16-14-3(6), which enterprise affects commerce in the State of Georgia and elsewhere.

153.

Alternatively, CMG Surety, CMG Life Services, Inc., Sovereign-American Securities, Inc., and International Policy Management & Marketing, LLC, R. Laken Mitchell, P.C., Mitchell, Tiller, and White, operated as an "association-in-fact," and comprised an "enterprise" within the meaning of O.C.G.A. § 16-14-3(6), which "enterprise" affects commerce in the State of Georgia and elsewhere.

154.

Mitchell, Tiller and White are persons employed by or associated with an enterprise described in this Complaint.

155.

Mitchell, Tiller and White have conducted or participated, directly or indirectly, in the conduct of the affairs of an enterprise described in this Complaint, and there were at least two acts of "racketeering activity," including wire fraud, and mail fraud, which is defined as "racketeering activity" under O.C.G.A. § 16-14-3(9)(A)(XXIX).

156.

Every time that Mitchell, Tiller, and White, or their agents, directed CMG Surety to transfer funds to personal accounts or to accounts of entities in which they controlled, they committed wire fraud and mail fraud in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 1341. Mitchell, Tiller and White and CMG Surety intentionally participated in a scheme to defraud Foxworthy of its rights to 40% of the profits of CMG Surety. This scheme involved setting up additional entities as a means to funnel profits from CMG Surety to them, so as to avoid distributing 40% of those profits to Foxworthy. Mitchell, Tiller, White, and CMG Surety had the specific intent to defraud Foxworthy by not disclosing the transfer of profits to them individually or to other entities. Mitchell, Tiller, and White and CMG Surety and/or their agents used wires, specifically telephone, facsimile and bank wires, as well as the mail, in furtherance of the scheme. Such actions directly and approximately caused damage to Foxworthy. Each instance in

which Mitchell, Tiller, White or their representatives transferred funds from CMG Surety to other entities controlled by them or to themselves personally, was done by telephone, facsimile, bank wires or mail, in connection with this scheme, and constitutes a separate predicate act.

157.

In the course of carrying out the scheme, Mitchell, Tiller, White, CMG Surety and their agents committed fraud against Foxworthy.

158.

By failing to disclose to Foxworthy that CMG Surety was transferring profits earned or to be earned by CMG Surety to Mitchell, Tiller, and White and/or CMG Surety, they and their agents made numerous false statements of material fact.

159.

These statements were known by Mitchell, Tiller, and White to be false when made. In addition, Mitchell, Tiller, White, and CMG Surety, have submitted financial statements of CMG Surety, which do not accurately reflect the profits earned or to be earned by CMG Surety and do not reflect profits diverted to Mitchell, Tiller and White individually or to the Defendants in which they control.

160.

The false statements made by Mitchell, Tiller, and White and CMG Surety and their agents were made for the purpose of preventing Plaintiff from discovering the fraudulent scheme of Mitchell, Tiller, and White in causing CMG Surety to divert profits to themselves personally

or to other entities and to the detriment of Foxworthy. As a result of Mitchell, Tiller, and White's misrepresentations and fraudulent concealment, Plaintiff has suffered damages in an amount to be proven at trial. As a direct and proximate result of Mitchell, Tiller, and White and CMG Surety's racketeering activity, Plaintiff has suffered injury to its property.

161.

Mitchell, Tiller, and White and CMG Surety's acts of racketeering activity constitute a pattern of racketeering activity because Mitchell, Tiller, White and CMG Surety committed at least two instances of racketeering activity that had the same or similar purposes, results, or participants, victims, or methods of commission.

162.

Since Mitchell, Tiller, White and/or CMG Surety unlawfully acquired money through a pattern of racketeering activity in violation of O.C.G.A. § 16-14-4(a), and because Mitchell, Tiller, White and CMG Surety conducted and/or participated in the affairs of an enterprise through a pattern of racketeering activity in violation of O.C.G.A. § 16-14-4(b), and because Plaintiff was directly injured by their unlawful conduct, Plaintiff seeks three times the amount of actual damages, attorney's fees, investigative expenses, plus punitive damages in an amount sufficient to punish them.

WHEREFORE, with respect to Count Seven, Plaintiff seeks the following: (a) the disgorgement of all amounts misappropriated from CMG Surety; (b) 40% of the profits earned or that should have been earned by CMG Surety, but were misappropriated from CMG Surety to

Mitchell, Tiller, and White, individually, or to any entity in which they control; (c) an award of actual and punitive damages in an amount to be determined at trial by jury; (d) an award of three times the amount of actual damages with respect to their RICO claims; and (e) all reasonable attorney's fees and costs for bringing this claim.

## COUNT EIGHT – FRAUD, FRADULENT MISREPRESENTATIONS, AND FRADULENT CONCEALMENT

163.

Plaintiff incorporates by references Paragraphs 1 - 162, as if fully set forth herein.

164.

Mitchell, Tiller, and White, individually and through CMG Surety, misrepresented to Plaintiff their overall plan and scheme with respect to the profits of CMG Surety, and with respect to how they would calculate, characterize, and distribute profits so as to comply with the Interest Agreements.

Mitchell, Tiller, and White represented to the Plaintiff that, in consideration of Plaintiff providing all of the necessary capital to start the Life Settlement business, and further in consideration of Plaintiff and its affiliated companies administering the loans necessary to purchase both the Life Settlements and to continue to pay premiums on the Life Settlements, that CMG Surety and the individual Defendants, Mitchell, Tiller, and White, would honor and abide by the Interest Agreements, and would pay to Plaintiff 40% of the profits of CMG Surety and treat Plaintiff as if it was a 40% equity owner of CMG Surety.  Without the capital Plaintiff

42

provided, in excess of $30 million dollars, CMG Surety would not have been able to get into the Life Settlement business.  Without Plaintiff paying the accruing premiums, the policies would not have remained in force and the investment would not have performed as represented to outside investors.

165.

However, Mitchell, Tiller, White, and CMG Surety knew, at the time that said representations were made to Bell in order to induce Plaintiff to loan tens of millions of dollars to the Life Settlement business for the purchase of Life Settlements, that they intended to and would divert enormous sums of money to themselves personally and to other entities which they controlled so as to purposely avoid paying to Plaintiff 40% of the profits of CMG Surety.

166.

Furthermore, after entering into the Interest Agreements, Mitchell, Tiller, White, and CMG Surety set out on a course of action of intentionally diverting profits earned and/or prospective profits to earned by CMG Surety, to either themselves or to other entities which they controlled, so as to avoid their legal and contractual duty to distribute 40% of these profits to the Plaintiff.

167.

In furtherance of this fraudulent scheme, Defendants concealed from the Plaintiff financial statements of CMG Surety, even after numerous demands that these be produced to the Plaintiff.

168.

Thereafter, once CMG Surety finally produced its financial statements, they knowingly and intentionally materially misrepresented the profits earned or that should have been earned, by CMG Surety.

169.

Furthermore, the Defendants engaged in a fraudulent scheme to divert profits of CMG Surety away from CMG Surety by cloaking them as "bonuses" to Mitchell, Tiller, or White or "tax payments" to Mitchell, Tiller, and White and/or "corporate tithes." Regardless of their nomenclature, however, all of these payments solely benefited Mitchell, Tiller, and White, individually, to the detriment of the Plaintiff.

170.

Defendants' representations to Plaintiff, and fraudulent concealment of material facts regarding the profits to be earned by CMG Surety or earned by CMG Surety, were willfully false and misleading. Defendants made these misrepresentations to induce Plaintiff to initially enter into the Interest Agreements, and thereafter continued to make misrepresentations and conceal material facts so that Plaintiff would continue to fund the Life Settlement business.

171.

Thereafter, Defendants made further misrepresentations to the Plaintiff concerning potential profits of CMG Surety arising out of the transfer of the SGAT trusts to an Australian mutual fund, which further induced the Plaintiff to arrange a loan in order to make the

investment viable.

172.

After the transfer of the interest of the SGATs to the Australian fund manager, Plaintiff did not receive its 40% of the profits due CMG Surety for this transaction. Instead, profits due to CMG Surety were fraudulently concealed and diverted by CMG Surety to Mitchell, Tiller, and White, individually and/or to other entities which they own or control.

173.

Each Defendant knew of, ratified, and endorsed the misrepresentations made to Plaintiff, the fraudulent concealment, and the fraudulent scheme of Mitchell, Tiller, and White and CMG Surety. Furthermore, Defendants made these false misrepresentations knowing them to be false at the time they were made. Defendants made these false misrepresentations to Plaintiff and others acting on behalf of Plaintiff, and these misrepresentations were made on Defendants' behalf and/or with other Defendants' authorization and consent, with the intent to defraud and induce Plaintiff to loan tens of millions of dollars for the Life Settlement business. Moreover, Defendants made these false misrepresentations and engaged in this fraudulent concealment and cover up, and fraudulent diversion of funds belonging to CMG Surety to other entities, with full knowledge of: (1) their falsity; (2) their knowing violation of their legal and contractual duty to the Plaintiff; (3) that the misrepresentations and concealment would be material to Plaintiff; and (4) that Plaintiff would justifiably rely on the misrepresentations and further would not know of the fraudulent concealment.

45

174.

In actual and reasonable reliance upon these false promises, Plaintiff was induced to enter into the Interest Agreements as well as other contractual agreements as explained above.

175.

Plaintiff's reasonable and justifiable reliance upon Defendants' false representations and concealmenthas caused substantial damages to Plaintiff and continues to cause damages to Plaintiff.

176.

Plaintiff's damages are an actual direct and proximate result of Defendants' fraud, fraudulent misrepresentations, and fraudulent concealment and Plaintiff is entitled to damages which are believed to be in excess of $20,000,000.00.

177.

In making the misrepresentations herein alleged and engaging in this fraudulent scheme, cover up and diversion of profits of CMG Surety to themselves and entities which they control, all in an effort to avoid the legal and contractual duty which they owed to Plaintiff to pay to Plaintiff 40% of the profits, Defendants are guilty of malice, oppression, and fraud. Defendants' conduct was carried out with a conscious disregard of Plaintiff's rights. Defendants intentionally and maliciously deceived the Plaintiff for their own financial gain and with complete disregard to Plaintiff's rights. Accordingly, Plaintiff is entitled to an award of punitive and exemplary damages in accordance with applicable laws and a total amount to be shown according to proof

at trial.

WHEREFORE, with respect to Count Eight, Plaintiff seeks the following: (a) the disgorgement of all amounts misappropriated from CMG Surety; (b) 40% of the profits earned or that should have been earned by CMG Surety, but were misappropriated from CMG Surety to Mitchell, Tiller, and White, individually, or to any entity in which they control; (c) an award of actual and punitive damages in an amount to be determined at trial by jury; (d) an award of three times the amount of actual damages with respect to their RICO claims; and (e) all reasonable attorney's fees and costs for bringing this claim.

## COUNT NINE – NEGLIGENT MISREPRESENTATION AND CONCEALMENT

### 178.

Plaintiff incorporates by references Paragraphs 1 - 177, as if fully set forth herein.

### 179.

When providing material information to Plaintiff on which they knew Plaintiff would reasonably rely, Defendants owed a duty of care to Plaintiff to ensure that the information provided was not false or misleading.

### 180.

When engaging in a partnership and a joint-venture with the Plaintiff, Defendants owed a duty of care to the Plaintiff to ensure not only that the information provided to Plaintiff was true, but that the manner in which Defendants would engage in the partnership and joint-venture would be honorable and consistent with the purposes of the partnership and joint-venture.

181.

Defendants collectively breached that duty when they took for themselves profits from the Life Settlement business in order to avoid paying to Plaintiff 40% of the distributable profits.

182.

Defendants made the representations alleged above to Plaintiff in a business and professional capacity, such as would lend authority and accuracy to the statements. However, Defendants had no reasonable ground for believing their statements to be true and they knew or should have known that the statements made to Plaintiff were false and were made with the purpose of inducing Plaintiff to enter into the Interest Agreements, and were further made with the purpose of inducing Plaintiff to continue funding premiums on the Life Settlements.

183.

Plaintiff's reliance upon Defendants' misrepresentations was justified and has caused damages to Plaintiff and has continued to cause damages to Plaintiff. Plaintiff's damages are an actual and proximate result of Defendants' negligent misrepresentations and negligent accounting of profits of CMG Surety, and Plaintiff is entitled to damages to be proven at trial.

WHEREFORE, with respect to Count Nine, Plaintiff respectfully requests that this Court: (a) enter judgment in favor of Plaintiff and against Defendants in an amount to be determined at trial plus interest; (b) award Plaintiff compensatory and punitive damages; (c) award Plaintiff a trial by jury; (d) award Plaintiff attorney's fees and cost; and (e) grant Plaintiff any other relief that this Court deems just and proper.

## COUNT TEN – BREACH OF CONTRACT

184.

Plaintiff incorporates by references Paragraphs 1 – 183, as if fully set forth herein.

185.

CMG Surety entered into the Interest Agreements in consideration of Foxworthy's services as manager of the two lending LLCs as well as in further consideration of Bell and BCM's partnership with CMG Surety.

186.

CMG Surety materially breached the Interest Agreements by failing and refusing to pay to Foxworthy forty percent (40%) of the profits of CMG Surety.

187.

CMG Surety has also materially breached the Interest Agreements by breaching the implied duty of good faith and fair dealing by diverting profits away from CMG Surety to other entities and/or mischaracterizing profits obtained by CMG Surety, in an effort to avoid CMG Surety's obligations to pay forty percent (40%) of its profits to Foxworthy.

188.

Due to CMG Surety's breaches of the Interest Agreements, Foxworthy has been deprived of its rightful share of forty percent (40%) of the true profits of CMG Surety.

WHEREFORE, with respect to Count Ten, Plaintiff respectfully requests that this Court: (a) Enter judgment in favor of Plaintiff and against Defendants in the amounts to be determined

at trial plus interest; (b) award Plaintiff compensatory damages, including without limitation, legal interest on the sums Plaintiff was due under the Interest Agreements; (c) award Plaintiff a trial by jury; (d) award Plaintiff attorneys' fees and costs; and (e) award Plaintiff any other relief that this Court deems just and proper.

## COUNT ELEVEN – UNFAIR TRADE PRACTICES

### 189.

Plaintiff incorporates by references Paragraphs 1 - 188, as if fully set forth herein.

### 190.

Plaintiff is a consumer under the terms of the Florida Deceptive and Unfair Practices Act, FLA Stat. §501.20, et seq., because Plaintiff is a business, a corporation, and a commercial institution, meeting the definition of consumer under FS §501.203(7).

### 191.

CMG Surety is engaged in trade and commerce.

### 192.

CMG Surety committed unfair or deceptive acts involving trade or commerce when it promised to pay Foxworthy forty percent (40%) of CMG Surety's profits in order to obtain performance from Foxworthy, Bell, and BCM, but thereafter, through deceit, attempted to divert profits away from CMG Surety and/or mischaracterized the profits that CMG Surety did receive in an effort to avoid CMG Surety's obligations to Foxworthy.

193.

CMG Surety committed unfair or deceptive acts involving trade or commerce when it started a new entity, CMG Life Services, in an attempt to funnel business and profits away from CMG Surety and, thereby, avoid its obligations to Foxworthy.

194.

Plaintiff has suffered damage as a direct result of the unfair and deceptive practices of CMG Surety, in that Plaintiff has not received forty percent (40%) of the profits of CMG Surety, despite Plaintiff's full performance of its obligations.

WHEREFORE, with respect to Count Eleven, Plaintiff respectfully requests that this Court: (a) enter judgment in favor of Plaintiff and against Defendants in the amounts to be determined at trial plus interest; (b) award Plaintiff compensatory damages; (c) award Plaintiff a trial by jury; (d) award Plaintiff attorneys' fees and costs; and (e) award Plaintiff any other relief that this Court deems just and proper.

## COUNT TWELVE – ATTORNEY'S FEES AND EXPENSES OF LITIGATION

195.

Plaintiff incorporates by references Paragraphs 1 – 194, as if fully set forth herein.

196.

Defendants' actions have caused Plaintiff to hire an attorney and institute this action. Therefore, the Florida Deceptive and Unfair Trade Practices Act, the federal RICO statutes, and the Georgia RICO statutes each authorize Plaintiff to obtain an award of attorney's fees and costs

in the event Plaintiff prevails in this action.

197.

Defendants in the underlying incident have willfully violated the terms of the Interest Agreements, have committed fraud, and have otherwise acted in bad faith and been stubbornly litigious, and Plaintiff is entitled to recover its attorney's fees and expenses of litigation, under O.C.G.A. 13-6-11, and Florida common law.

WHEREFORE, with respect to Count Twelve, Plaintiff respectfully requests that this Court (a) award Plaintiff attorneys' fees and costs; and (b) award Plaintiff such other and further relief as this Court may deem just and proper.

## COUNT THIRTEEN – ACCOUNTING

198.

Plaintiff incorporates by references Paragraphs 1 – 197, as if fully set forth herein.

199.

CMG Surety is a partner and/or joint venturer with Foxworthy and therefore has fiduciary obligations to Plaintiff.

200.

CMG Surety agreed to pay Plaintiff forty percent (40%) of CMG Surety's profits, but has failed and refused to provide documents which would confirm the amount Plaintiff is entitled to receive.

201.

Because Plaintiff's damages are directly tied to the profits earned by CMG Surety, it is necessary that Plaintiff obtain an accounting of the records of CMG Surety, and of other Defendants, in order to confirm the true profits of CMG Surety and to determine whether any monies owed to or belonging to CMG Surety were diverted to any of the other Defendants.

202.

In order to confirm the true profits of CMG Surety, it is necessary that an accounting of CMG Surety's records be performed.

WHEREFORE, with respect to Count Thirteen, Plaintiff respectfully requests that this Court:

(a) Order an accounting of the finances of CMG Surety from the year 2004 to the present, to be conducted by an independent certified public accountant; and

(b) Grant such other relief that this Court deems just and proper.

## COUNT FOURTEEN – INTEREST

203.

Plaintiff incorporates by references Paragraphs 1 – 202, as if fully set forth herein.

204.

Plaintiff has established a cause of action for breach of contract, and breach of fiduciary duty.

53

205.

The forty percent (40%) of profits owed to Plaintiff constitutes a liquidated damage in that it is easily calculated once the Court can determine the actual and true profits of CMG Surety.

206.

Therefore, Plaintiff is entitled to interest at the rate provided by law from the date when the payments of forty percent (40%) of the profits were due, i.e. back to the year-end for each year from 2004 to the present during which CMG Surety failed to pay Foxworthy the true forty percent (40%) of its profits.

WHEREFORE, with respect to Count Fourteen, Plaintiff respectfully requests that the Court: (a) award Plaintiff pre-judgment interest at the rate provided by law; and (b) grant Plaintiff such other and further relief as the Court deems just and proper.

## COUNT FIFTEEN—EQUITABLE RELIEF

207.

Plaintiff incorporates by references Paragraphs 1 – 206, as if fully set forth herein.

208.

Plaintiff is entitled to receive such equitable relief as the Court deems necessary and appropriate to prevent any transfer of diminution by Defendants of any assets which by law must, as a result of the wrongdoing identified above, be held for the benefit of Plaintiff pending final adjudication of the claims herein made, including but not limited to any stock, or

membership interest that any defendant has in any other company defendant, and any financial gain obtained by any defendant as a result of the wrongdoing identified or alluded to above.

### DEMAND FOR JURY TRIAL AND PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiff is entitled to and hereby demands the following relief:

(1) That Plaintiff recover from CMG Surety 40% of the profits earned by CMG Surety, from 2004 to the present, with legal interest accordingly;

(2) That Plaintiff recover from any and all Defendants, jointly and severally, any portion of the profits of CMG Surety wrongfully diverted to said Defendant and which should have been paid to Plaintiff;

(3) That Plaintiff recover unlimited punitive damages from Defendants in an amount determined by the enlightened consciences of fair and impartial jurors as sufficient to deter, penalize, and punish Defendants given the circumstances of this case;

(4) That Plaintiff be awarded their expenses of litigation, including reasonable attorneys fees:

(5) That Plaintiff recover treble the amount of any compensatory damages;

(6) That an accounting be performed on CMG Surety, and that this Court freeze all assets of the Defendants pending the results of said accounting;

(7) That Plaintiff have a jury trial;

(8) That Plaintiff have such other and further relief, legal and equitable, to which it may be entitled.

This __12th__ day of __August__, 2011.

LANGDALE VALLOTTON, LLP

_____

WILLIAM P. LANGDALE, III
Georgia Bar No. 435910

_____

ROBERT PLUMB, JR.
Georgia Bar No. 582273

_____

J. DANIEL SCHERT
Georgia Bar No. 629176

BURNS, DAY & PRESNELL, P.A.

_____

JAMES J. MILLS
Georgia Bar No. 509646
Attorneys for Plaintiff

Langdale Vallotton, LLP
1007 N. Patterson Street (31601)
Post Office Box 1547
Valdosta, Georgia 31603-1547
(229) 244-5400 – telephone
(229) 244-5475 – facsimile

Burns, Day & Presnell, P.A.
2626 Glenwood Avenue, Suite 560
Post Office Box 10867
Raleigh, North Carolina 27605

56

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FOXWORTHY, INC.                    :
                                   :
        Plaintiff,                 :        Civil Action File No. _____
                                   :
vs.                                :
                                   :
CMG SURETY, LLC,                   :
CMG LIFE SERVICES, INC.,           :
SOVEREIGN-AMERICAN SECURITIES,     :
INC., INTERNATIONAL POLICY         :
MANAGEMENT & MARKETING, LLC,       :
R. LAKEN MITCHELL, P.C.,           :
R. LAKEN MITCHELL,                 :
RONALD TILLER, and ROBERT WHITE    :
                                   :
        Defendants.                :

## VERIFICATION

STATE OF GEORGIA

COUNTY OF LOWNDES

        Personally appeared before the undersigned officer, duly authorized by law to administer

oaths, comes RON BELL, after first being duly sworn, deposes and says that the facts contained

in the Complaint are true and correct to the best of his knowledge, information and belief.

        This the _11_ day of August, 2011.

                                        _____
                                        RON BELL

Sworn and subscribed before me
this _11_ day of August, 2011.

_____
Notary Public

BJ D LAGASCA
Notary Public
Fulton County
State of Georgia
My Commission Expires Sep 15, 2012

1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FOXWORTHY, INC.                              :

    Plaintiff,                          :       Civil Action File No. _____

    vs.                                 :

CMG SURETY, LLC,                             :
CMG LIFE SERVICES, INC.,                     :
SOVEREIGN-AMERICAN SECURITIES,               :
INC., INTERNATIONAL POLICY                   :
MANAGEMENT & MARKETING, LLC,                 :
R. LAKEN MITCHELL, P.C.,                     :
R. LAKEN MITCHELL,                           :
RONALD TILLER, and ROBERT WHITE              :

    Defendants.                         :

## VERIFICATION

STATE OF GEORGIA

COUNTY OF LOWNDES

    Personally appeared before the undersigned officer, duly authorized by law to administer oaths, comes CURTIS H. RITTER for and on behalf of the Plaintiff, FOXWORTHY, INC., after first being duly sworn, deposes and says that the facts contained in the Complaint are true and correct to the best of his knowledge, information and belief.

    This the / / day of August, 2011.

                           FOXWORTHY, INC.

                           By:  _Curtis H. Ritter_
                              ( Curtis H. Ritter, President

Sworn and subscribed before me
this / / day of August, 2011.

_Brian Lee Rouse_
Notary Public