IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FOXWORTHY, INC.,

    Plaintiff,

      v.

    CIVIL ACTION FILE
    NO. 1:11-CV-2682-TWT

CMG LIFE SERVICES, INC., et al.,

    Defendants.

## ORDER

This is a breach of contract action. It is before the Court on the Defendants'
Motion to Dismiss [Doc. 21]. For the reasons set forth below, the Court GRANTS IN
PART and DENIES IN PART the Defendants' motion.

## I. Background

Defendant CMG Surety, LLC ("CMG") is a viatical settlement provider. In
December 2004, CMG entered into two agreements with Foxworthy, Inc. (the
"Agreements"). (See Compl.., Exs. C & D.) Under the Agreements, Foxworthy
would finance CMG's life settlement securitization activities. In exchange,
Foxworthy would receive 40% of CMG's profits and 40% of any funds arising from
a sale of CMG. CMG ultimately paid Foxworthy $3.675 million under the
Agreements.

On August 12, 2011, Foxworthy filed this Complaint against CMG, CMG Life Services, Inc. ("CMG Life Services"), Sovereign-American Securities, Inc. ("SAS"), International Policy Management & Marketing, LLC ("International Policy"), R. Laken Mitchell, P.C. ("Mitchell") (collectively, the "Corporate Defendants"), R. Laken Mitchell, Ronald Tiller, and Robert White (collectively, the "Individual Defendants") [Doc. 1]. Mitchell, Tiller, and White are "members, directors, and officers" of the Corporate Defendants.  (Compl. ¶ 100.)

The Complaint sets forth claims for negligent misrepresentation, fraud, breach of fiduciary duty, federal and state RICO violations, breach of contract, violations of the Deceptive and Unfair Trade Practices Act, unjust enrichment, and an accounting [see Doc. 1].  Specifically, the Plaintiff alleges that the Defendants misrepresented CMG's actual profits and therefore failed to properly distribute profits to Foxworthy under the Agreements.  On November 18, 2011, the Defendants filed a Motion to Dismiss [Doc. 21].  The Defendants argue that the Plaintiff's claims sound in contract, not tort.  Further, the Defendants argue that the Plaintiff's breach of contract claims are barred by the statute of limitations.

## II.  Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. Ashcroft v. Iqbal, 129 S.

Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).  A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citations and quotations omitted).  In ruling on a motion to dismiss, the court must accept factual allegations as true and construe them in the light most favorable to the plaintiff.  See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983).  Generally, notice pleading is all that is required for a valid complaint.  See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986).  Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 550 U.S. at 555).

## III.  Discussion

A.    Choice of Law

The Defendants contend that Florida law governs the Plaintiff's tort claims.[1]

Foxworthy argues that Georgia law controls.  The Court must apply the choice of law

---

[1]The Agreements contain Florida choice of law provisions.  (See Compl., Exs. C & D, ¶ 14.)  Thus, Florida law will govern the Plaintiff's contract claims.

rules of the state in which it sits.  <u>Klaxon v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496

(1941).  Georgia applies the rule of *lex loci delicti*.  <u>Garland v. Advanced Med. Fund,</u>

<u>L.P.</u>, 86 F. Supp. 2d 1195, 1205 (N.D. Ga. 2000).  Under *lex loci delicti*, "the place

of wrong, the locus delicti, is the place where the injury sustained was suffered rather

than the place where the act was committed, or, as is sometimes more generally put,

it is the place where the last event necessary to make an actor liable for an alleged tort

takes place."  <u>Id.</u> (quoting <u>Risdon Enters. v. Colemill Enters.</u>, 172 Ga. App. 902, 903

(1984)).

In <u>Garland</u>, the plaintiffs alleged contract and tort claims, including claims for

fraud, negligent misrepresentation, and breach of fiduciary duty.  Applying the rule

of *lex loci delicti*, the court noted that "Georgia law states the rule in two different

ways: the place of the wrong is either the jurisdiction where the harm was suffered or

the jurisdiction where the last event necessary for liability occurs."  <u>Id.</u>  Although the

alleged misrepresentations had been made in Georgia, the plaintiffs resided in Florida.

The court found that "the place of the injury is where the economic loss occurred

rather than the state where the fraudulent misrepresentations were made."  <u>Id.</u> <u>see also</u>

<u>Velten v. Regis B. Lippert Intercat, Inc.</u>, 985 F.2d 1515, 1521 (11th Cir. 1993)

(finding that harm occurred in state where plaintiff resided).  Thus, Florida law

controlled the plaintiffs' tort claims.  The court reasoned that "the [plaintiffs] resided

at all relevant times in Florida and bore the economic impact of the alleged torts in Florida." Id. Further, "the [plaintiffs'] detrimental reliance [was] the last event necessary to make Defendants liable, and their reliance and any damages attributable thereto occurred in Florida." Id.

Here, the Plaintiff's principle place of business is located in Georgia. Indeed, Foxworthy's only office is located in Georgia. Thus, as in Garland and Velten, Foxworthy "bore the economic impact of the alleged torts in [Georgia]." Id. Further, to the extent Foxworthy relied on representations made by the Defendants, it did so in Georgia. Nevertheless, the Defendants argue that the choice of law provisions in the Agreements dictate that Florida law controls. The language of the Agreements, however, does not control the Plaintiff's tort claims. See id. at 1204 (finding that choice of law provisions in contracts between parties did not control plaintiffs' tort claims). For these reasons, Georgia law governs the tort claims.

B. Economic Loss Rule

The Defendants argue that the economic loss rule bars the Plaintiff's tort claims. "Both Florida and Georgia have an economic loss rule which generally prohibits a contracting party from suing in tort for only economic damages." Luigino's Int'l, Inc.

v. Miller, 311 Fed. App'x 289, 292-293 (11th Cir. 2009).[2] "The 'economic loss rule' generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort." Gen. Elec. Co. v. Lowe's Home Ctrs., Inc., 279 Ga. 77 (2005). "Under the economic loss rule, a plaintiff can recover in tort only those economic losses resulting from injury to his person or damage to his property; a plaintiff cannot recover economic losses associated with injury to the person or damage to the property of another." Id.

In Ben-Yishay v. Mastercraft Dev. LLC, 553 F. Supp. 2d 1360, 1371 (S.D. Fla. 2008), home buyers entered into construction and purchase contracts with the defendant construction company. When the homes were not completed, the buyers sued the construction company and several of the company's officers. The complaint included claims for breach of contract and negligent misrepresentation. Specifically, the plaintiffs alleged that the defendants made promises in the contracts that went unfulfilled. The defendants argued that the economic loss rule barred the tort claims. The court held that the economic loss rule barred the fraudulent inducement and negligent misrepresentation claims. The court reasoned that "'statements or misrepresentations made to induce an individual to enter a contract, if later contained

---

[2]The parties concede that Georgia and Florida's economic loss rule is identical. (See Defs.' Reply in Supp. of Defs.' Mot. to Dismiss, at 3; Pl.'s Resp. in Opp'n to Defs.' Mot to Dismiss, at 8, n.3.)

within the terms of the actual contract, cannot constitute a basis on which to bring the fraud claim.'" Id. at 1370 (quoting Flamenbaum v. Orient Lines, Inc., No. 03-22549-CIV, 2004 WL 1773207, at *7 (S.D. Fla. July 20, 2004)).

Here, the Plaintiff's breach of fiduciary duty and fraud claims allege that the Defendants induced the Plaintiff to enter into the Agreements by promising to pay 40% of CMG's profits. The Complaint further alleges that Defendants failed to pay 40% of CMG's profits as required by the Agreements. As in Bin-Yishay, the allegedly fraudulent representations made to the Plaintiff were specifically including in the Agreements. The economic damages arising from the Defendants' failure to pay 40% of CMG's profits arise from the Agreements. For these reasons, the Plaintiff's breach of fiduciary duty and fraud claims are barred by the economic loss rule.

Nevertheless, Foxworthy contends that the economic loss rule does not bar its negligent misrepresentation claim. (See Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss, at 9.) Generally, the economic loss rule does not bar claims "center[ing] upon alleged inducement to enter into a contractual relationship rather than performance of the contracts." Mobil Oil Corp. v. Dade Cnty. Ensoil Mgmt. Co. Inc., 982 F. Supp. 873, 880-881 (S.D. Fla. 1997). A negligent misrepresentation claim, however, is barred by the economic loss rule where "it is not independent of the breach of contract

claim and the merger clause restricts reliance on the prior representations."  Ben-Yishay, 553 F. Supp. 2d at 1370.  Here, the Complaint alleges that the Defendants' misrepresentations "were made with the purpose of inducing Plaintiff to enter into the [Agreements]."  (Compl. ¶ 182.)  Indeed, the Defendants allegedly promised Foxworthy that it would receive 40% of CMG's profits.  As in Bin-Yishay, however, "the allegedly fraudulent representations on which Plaintiff[] allegedly relied are the same obligations memorialized in the agreement."  Ben-Yishay, 553 F. Supp. 2d at 1370.  "Moreover, the Agreements contain a merger clause which explicitly and unambiguously supercedes all prior verbal and written agreements."  Id.; (Compl., Exs. C & D, ¶ 18.)  For these reasons, the economic recover rule also bars the Plaintiff's negligent misrepresentation claim.

Finally, the Plaintiff argues that the economic loss rule does not bar claims against the Individual Defendants.[3]  In Bin-Yishay, the plaintiff contended that the economic loss rule would not bar claims against officers of the defendant builder because those individual defendants were not in privity with the plaintiff.  The court rejected that argument, noting that the rationale for the rule "applies with equal force whether the fraudulent inducement and misrepresentation claims are asserted against

_____

[3]In its Response, the Plaintiff does not contend that the economic loss rule does not apply to the fraud and breach of fiduciary duty claims against CMG.

-8-

[the corporate defendants], or against [corporate officers]." Id. at 1371.  Indeed, "[t]o find otherwise would lead to incongruous result that the economic loss rule would bar applicable tort claims against a corporation, but not against the directors or officers who negotiated the agreement."  Id.

Here, as in Bin-Yishay, the Individual Defendants are "managers, members, and officers" of CMG.  (Compl. ¶ 100.)  The Complaint alleges that the Individual Defendants acted, in their roles as members and officers of the Corporate Defendants, to commit torts against Foxworthy.  (Id. ¶¶ 100, 104, 109, & 164.)  Thus, as in Bin-Yishay, the economic loss rule applies to the Individual Defendants.  See Ben-Yishay, 553 F. Supp. 2d at 1371.  (noting that economic loss rule "applies with equal force whether the fraudulent inducement and misrepresentation claims are asserted against [the corporate defendants], or against [corporate officers].").  "To find otherwise would lead to incongruous result that the economic loss rule would bar applicable tort claims against a corporation, but not against the directors or officers who negotiated the agreement."  Id.

The economic loss rule does not, however, apply to the Corporate Defendants that are not in privity with Foxworthy.  Unlike in Bin-Yishay, the Complaint does not specifically allege that CMG Life Services, SAS, International Policy, or Mitchell breached their fiduciary duties or made fraudulent or negligent misrepresentations *on*

*behalf* of CMG. Nor does the Complaint allege that Foxworthy was in privity with any of these Defendants. Thus, the rational behind the economic loss rule does not extend to CMG Life Services, SAS, International Policy, or Mitchell.

C.    Fiduciary Duty

The Defendants argue that the breach of fiduciary duty claim should be dismissed. Specifically, the Defendants contend that there was no joint venture or partnership between Foxworthy and any of the Defendants. "A joint venture arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control." Kelleher v. Pain Care of Ga., Inc., 246 Ga. App. 619, 706 (2000) (quoting Rossi v. Oxley, 269 Ga. 82 (1998)) (quotations omitted). Importantly, the "right of mutual control is a 'crucial element' to establishment of a joint venture." Id. (quoting Rossi, 269 Ga. at 82-83).

Here, the Agreements provide that Foxworthy's "ownership of the Restricted Financial Interest will not provide Foxworthy with any right to control or otherwise influence the management of [CMG] in any manner." (Compl., Exs. C & D, ¶ 6.) Although the Plaintiff asserts in its Response that it "had the right of control" [Doc. 26, at 10], the Complaint does not allege that Foxworthy had any right to control CMG. Indeed, the Agreements state exactly the opposite. Thus, there was no joint

venture or partnership between the Plaintiff and the Defendants. For this reason, Foxworthy's fiduciary duty claims are dismissed.

D. Fraud

The Defendants argue that the Plaintiff's fraud claims should be dismissed. With respect to fraud claims, Federal Rule of Civil Procedure 9(b) requires that "the complaint set[ ] forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1371 (11th Cir.1997)).

Here, the Complaint alleges that the Defendants "misrepresented to Plaintiff their overall plan and scheme with respect to the profits of CMG." (Compl. ¶ 164.) The Complaint also states that the "Defendants made further misrepresentations to the Plaintiff concerning potential profits of CMG Surety arising out of the transfer" of certain trusts. (Compl., ¶ 171.) These allegations fail to state the content, time, or

place that the Defendants made the allegedly fraudulent statements.[4]  Nor does the

Complaint specify which of the Defendants made such representations.  See Ambrosia

Coal & Constr. Co. v. Morales, 482 F.3d 1309, 1317 (11th Cir. 2007) (quoting Brooks

v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1380-81 (11th Cir.

1997)) ("[I]n a case involving multiple defendants . . . the complaint should inform

each defendant of the nature of his alleged participation in the fraud.").  Thus, the

allegedly fraudulent misrepresentations in the Complaint are not specific enough to

satisfy Rule 9(b).

Finally, the Complaint states that the "Defendants concealed from the Plaintiff

financial statements of CMG Surety" and that "once CMG Surety finally produced its

financial statements, they knowingly and intentionally materially misrepresented the

profits earned or that should have been earned."  (Compl., ¶¶ 167 & 168.)  Again, the

Plaintiff fails to state which Defendant misrepresented CMG's profits or what those

inaccurate profit statements were.  For these reasons, the Plaintiff's fraud claim is

dismissed.

---

[4]To the extent these allegations refer to the Defendants' promise to pay
Foxworthy 40% of CMG's profits, those promises are included in the Agreements.
As discussed above, tort claims arising exclusively from the Defendants' alleged
breach of the Agreements are barred by the economic loss rule.

### E.    Negligent Misrepresentation

Similarly, the Defendants argue that the Plaintiff's negligent misrepresentation claim does not meet the requirements of Rule 9(b).  With respect to negligent misrepresentation, the Complaint asserts that the "Defendants made the representations alleged above to Plaintiff . . . with the purpose of inducing Plaintiff to enter into the Interest Agreements, and were further made with the purpose of inducing Plaintiff to continue funding premiums on Life Settlements."  (Compl., ¶ 182.)    This allegation, while ambiguous, apparently refers to the alleged misrepresentations that underlie the fraud claim. Because the negligent misrepresentation claim arises out of the same alleged misrepresentations as the fraud claim, both claims must meet the requirements of Rule 9(b).[5]  See Brown v. J.P. Turner & Co., No. 09-CV-2649, 2011 WL 1882522, at *2 (N.D. Ga. May 17, 2011) (noting that where all claims "arise out of the same allegedly fraudulent conduct," all claims must comply with Rule 9).  Thus, for the same reasons listed above, the Plaintiff's negligent misrepresentation claim fails to meet the requirements of Rule 9(b).

---

[5]Indeed, the Plaintiff does not contend that its negligent misrepresentation claim is not subject to Rule 9(b)'s heightened requirements.

Further, even if Rule 9(b) does not apply to the negligent misrepresentation claim, the Complaint must meet the notice requirements of Rule 8. Under Rule 8, Foxworthy must give the Defendants fair notice of the Plaintiff's claim and the grounds upon which it rests. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (<u>citing</u> <u>Twombly</u>, 550 U.S. at 555). Here, the Complaint fails to identify which representations were allegedly negligent,[6] when those representations were made, and which Defendant made them. Under such circumstances, the Defendants have insufficient notice of the facts upon which the Plaintiff's claim rests. For these reasons, the Plaintiff's negligent misrepresentation claim is dismissed.

F.     <u>Federal RICO</u>

The Defendants argue that the Plaintiff's federal RICO claim should be dismissed for failure to comply with Rule 9(b). <u>See</u> 18 U.S.C. § 1962. "Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity." <u>Ambrosia Coal</u>, 482 F.3d at 1316. "To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements

---

[6]The negligent representation claim appears to reference the misrepresentations in the fraud claim. As discussed above, however, those allegations fail to specify when, where, or who made the allegedly fraudulent statements.

misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." <u>Id.</u> at 1316-17.

Here, the Plaintiffs allege violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1341. (<u>See</u> Compl., ¶ 138.) Specifically, the Complaint states that "[e]very time that Mitchell, Tiller, and White, or their agents, directed CMG Surety to transfer funds to the entities controlled by them, or to them individually, they committed wire fraud and/or mail fraud in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 1341." (Compl., ¶ 138.) Further, the Complaint states that "Mitchell, Tiller, and White had the specific intent to defraud Foxworthy by not disclosing the profits earned by CMG . . . [and] not providing Foxworthy with updated and accurate financial statements." (Compl., ¶ 139.) These allegations mimic the statements in the fraud count. As discussed above, the Plaintiff does not specify where or when the allegedly inaccurate profit statements were made. Most importantly, the Complaint does not state what those inaccurate profit statements were. Finally, the Plaintiff does not indicate when, where, or how the Defendants "directed CMG Surety to transfer funds." (Compl., ¶ 138.) Indeed, the Complaint simply states that the Defendants committed mail and wire fraud "[e]very time" they did so. These generic allegations fail to meet the requirements of Rule 9(b). For this reason, the Plaintiff's federal RICO claim is dismissed.

G.    Georgia RICO

The Defendants have moved to dismiss the Plaintiff's Georgia RICO claims. Under O.C.G.A. § 16-14-4, "[i]t is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." O.C.G.A. § 16-14-4(a).  "'Pattern of racketeering activity' means: (A) Engaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission." O.C.G.A. § 16-14-3(8).  The Defendants argue that all Foxworthy's allegations all relate to a single transaction and thus do not constitute a "pattern of racketeering activity."

In Cobb v. Kennon Realty Servs., 191 Ga. App. 740 (1989), the defendant issued a loan secured by the plaintiff's home.  When the defendant foreclosed on the home, the plaintiff sued, alleging violations of Georgia's RICO statute.  The court held, however, that there was no "pattern of racketeering activity," reasoning that the "evidence submitted concerned only the one extended transaction between [the homeowner] and [the defendants]."  Id. at 740.

Similarly, in <u>Perimeter Realty v. GAPI, Inc.</u>, 243 Ga. App. 584 (2000), a group of real estate brokers entered into a commission sharing agreement with the defendant seller.  After extensive negotiations, the seller executed two separate closings but failed to pay the brokers a commission.  The brokers brought a Georgia RICO action seeking to recover the unpaid commissions.  The plaintiff alleged that the defendants had committed predicate acts of theft by deception, theft of services, and mail or wire fraud.  Specifically, the plaintiffs argued that the defendants had committed at least one predicate act at each of the closings.  Although the plaintiffs alleged multiple acts, the court held that all acts related to the same transaction–the sale of the defendant's property.  The court reasoned that "the two closings were part of one transaction" to purchase a single property.  <u>Id.</u> at 591.

Here, the Plaintiff alleges fraudulent activity spanning several years.  As in <u>Cobb</u> and <u>Perimeter Realty</u>, the Plaintiff claims that the Defendants made multiple false statements and omissions.  All those statements, however, related to the viatical settlement financing transaction between CMG and Foxworthy.  Thus, as in <u>Perimeter Realty</u>, the various fraudulent acts alleged in the Complaint do not constitute a "pattern of racketeering activity."  <u>See</u> <u>id.</u> (noting that predicate acts occurring at different closings did not constitute a pattern of racketeering activity where those acts

related to same transaction).  For this reason, the Plaintiff's Georgia RICO claim is dismissed.

H.    Florida Deceptive and Unfair Trade Practices Act

The Defendants have  moved to dismiss the Plaintiff's Deceptive and Unfair Trade Practices Act ("DUTPA") claim.  See FLA. STAT. § 501.201.  The DUTPA "does not apply to . . . [a]ny person or activity regulated under laws administered by: (a) The Office of Insurance Regulation of the Financial Services Commission." FLA. STAT. § 501.212(4).   Under Florida law, the purchase of viatical settlement is regulated by the Office of Insurance Regulation.  See FLA. STAT. § 20.121(3)(a)(1). In its Response, Foxworthy does not contend that the DUTPA applies to the sale of viatical settlements.  For this reason, the Plaintiff's DUTPA claim is dismissed.

I.    Breach of Contract

The Defendants have moved to dismiss the Plaintiff's breach of contract claim. The Plaintiff claims that CMG breached the Agreements by failing to pay 40% of CMG's profits to Foxworthy.  The Defendants contend that this claim sounds in tort, not contract.  Conversely, in their economic loss argument, the Defendants contend that Foxworthy's tort claims are actually mislabeled contract claims.  CMG cannot have it both ways.  The Agreements provide that CMG will pay 40% of its profits to Foxworthy.  The Complaint alleges that CMG has failed to do so, thereby breaching

the Agreements. Specifically, the Complaint states that CMG paid Foxworthy only $3,675,000 of the $8,762,633.83 that was due under the Agreements. (Compl., ¶ 86.) For this reason, the Plaintiff's breach of contract claims should not be dismissed.

The Defendants also argue, however, that the statute of limitations bars all contract claims that arose before August 2006. Under Florida law,[7] the statute of limitations for breach of contract claims is five years. FLA. STAT. § 95.11(2)(b). The Complaint alleges CMG breached the Agreements from 2004 to 2010. (Compl. ¶ 86.) Foxworthy filed this Complaint on April 12, 2011. Thus, the Defendants contend, any damages for breaches before April 12, 2006, should be dismissed. The statute of limitations, however, is tolled by "[t]he payment of any part of the principal or interest of any obligation or liability founded on a written instrument." FLA. STAT. § 95.051(f). Here, the Complaint states that from 2004 to 2010, CMG paid Foxworthy $3,675,000 of the $8,762,633.83 that was due under the Agreements. (Compl., ¶ 86.) These voluntary payments tolled the statute of limitations for the Plaintiff's breach of contract claim. For this reason, the Plaintiff's breach of contract action should not be dismissed.

---

[7]Unlike the tort claims, the breach of contract claims are governed by Florida law pursuant to the choice of law provision in the Agreements. (See Compl., Exs. C & D, ¶ 14.)

J.      Unjust Enrichment

The Defendants have moved to dismiss the Plaintiff's unjust enrichment claim. "The essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." Rollins Inc. v. Butland, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006). The Defendants contend that Foxworthy did not confer a benefit upon CMG Life Services, SAS, or International Policy. Here, the Plaintiff conferred a benefit upon CMG by funding viatical settlement transactions under the Agreements. The Plaintiff alleges that CMG later transferred those funds to other Defendants. Thus, CMG, not Foxworthy, conferred the benefit to CMG Life Services, SAS, and International Policy. The Complaint does not allege that Foxworthy conferred any benefit directly to CMG Life Services, SAS, or International Policy. An alternative ruling would expose any downstream recipient of funds originally contributed by Foxworthy to liability for unjust enrichment. For these reasons, the Plaintiff's unjust enrichment claim against CMG Life Services, SAS, and International Policy is dismissed.

### K. Accounting

Finally, the Defendants have moved to dismiss the Plaintiff's claim for an accounting and other equitable relief. Specifically, the Defendants claim that Foxworthy has not pled the lack of an adequate remedy at law. "To state a claim for an equitable accounting, the plaintiff must allege that 'the contract demands between litigants involve extensive or complicated accounts and it is not clear that the remedy at law is as full, adequate and expeditious as it is in equity.'" Bankers Trust Realty, Inc. v. Kluger, 672 So. 2d 897, 898 (Fla. Dist. Ct. App. 1996) (quoting F.A. Chastain Constr., Inc. v. Pratt, 146 So. 2d 910, 913 (Fla. Dist. Ct. App. 1962)). However, "impossibility of ascertaining the amount of plaintiff's legal damages may establish inadequacy of the legal remedy so as to support an award of injunctive relief." Liza Danielle, Inc. v. Jamko, Inc., 408 So. 2d 735, 738 (Fla. Dist. Ct. App. 1982). Here, the relationship between the parties spanned eight years and involved millions of dollars. Further, Foxworthy alleges that it is uncertain how much money it is owed under the Agreements. (See Compl. ¶ 201.) Thus, Foxworthy's claim involves extensive and complicated accounts for which the legal remedy is unclear. See Bankers Trust, 672 So. 2d at 898. For these reasons, Foxworthy's claim for an equitable accounting should not be dismissed.

## IV.  Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN

PART the Defendants' motion [Doc. 21].

SO ORDERED, this 13 day of April, 2012.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge